O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COACH SERVICES, INC., | CASE NO. 2:10-CV-02326-JST (PLAx) |
| Plaintiff, | |
| vs. | **ORDER GRANTING APPLICATION FOR DEFAULT JUDGMENT** |
| YNM, INC., and YOUNG GOON YOO, | |
| Defendants. | |

Before the Court is Plaintiff Coach Service's ("Plaintiff") Application for Default Judgment. (Doc. 39.) The Court finds that Plaintiff has demonstrated that default judgment is appropriate in this case and GRANTS the Application for Default Judgment.

**I. Background**

Plaintiff is engaged in the manufacture, marketing, and sale of leather and mixed material products, including handbags, wallets, and apparel, under the "Coach" label. (Compl., Doc. 1 ¶ 10.) Defendants are alleged to have imported, distributed, and sold merchandise bearing marks indistinguishable from Plaintiff's Coach mark. (*Id.* ¶ 23.)

On March 30, 2010, Plaintiff filed the Complaint in this matter against Defendants YNM, Inc. and Young Goon Yoo (collectively "Defendants") alleging trademark infringement, copyright infringement, and unfair competition. (Compl., Doc. 1.) On April 8, 2010, Defendants returned the Acknowledgment of Service, certifying that Defendants had been served with the Complaint and Summons in this matter. (Doc. 5.) On April 15, 2010, Defendants each filed an Answer. (Docs. 6, 7.) On July 19, 2010, counsel for Plaintiff and Defendants both appeared for a scheduling conference held before Judge Gary A. Feess. (Doc. 11.)

On September 17, 2010, Plaintiff moved to compel response to interrogatories and document production from Defendant YNM. (Docs. 17, 18.) Defendant YNM did not oppose these motions and Magistrate Judge Paul L. Abrams granted the motions, including awarding $1,000.00 to Plaintiff, on October 6, 2010. (Doc. 21.) On November 11, 2010, Plaintiff moved to strike Defendants' Answers and for sanctions based on Defendants' failure to comply with the October 6, 2010 Discovery Order. (Doc. 25.) Magistrate Judge Abrams did not impose terminating sanctions but instead ordered Defendant YNM to pay $200 per day for each day after December 14, 2010 until Defendant YNM had submitted all discovery responses and monetary payments. (Doc. 26.) Defendants did not respond and Plaintiff filed a second motion for sanctions on January 3, 2011. (Doc. 27.)

On January 18, 2011, Magistrate Judge Abrams filed a Report and Recommendation, recommending that the Court grant Plaintiff's motion for sanctions. (Doc. 29.) On February 17, 2011, the Court adopted the Report and Recommendation, granted Plaintiff's motion, struck Defendant YNM's Answer, and entered default against Defendant YNM. (Doc. 30.) On March 9, 2011, the Court ordered Defendant Yoo to show cause as to why his Answer should not be stricken and default entered against him. (Doc. 34.) After Defendant Yoo neither responded to the show-cause order nor appeared at the show-cause hearing, the Court struck his Answer and entered default against him. (Doc. 37.) On March 28, 2011, Plaintiff filed the instant Motion for Default Judgment against Defendants. (Doc. 39.)

### II. Legal Standard

"The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977). "After entry of default, the Court may enter a default judgment." *Penpower Tech. Ltd. v. S.P.C. Tech.*, 627 F. Supp. 2d, 1083, 1088 (N.D. Cal. 2008); *see* Fed. R. Civ. P. 55(b)(2). Local Rule 55-1 requires that a motion for default judgment be accompanied by a declaration that includes:

> (a) When and against what party the default was entered; (b) [t]he identification of the pleading to which default was entered; (c) [w]hether the defaulting party is an infant or incompetent person . . . (d) [t]hat the Servicemembers Civil Relief Act (50 App. U.S.C. § 521) does not apply; and (e) [t]hat notice has been served on the defaulting party, if required by [Federal Rule of Civil Procedure] 55(b)(2).

C.D. Cal. R. 55-1. "Rule 55(b)(2) requires service on the defaulting party only if that party has appeared in the action." *Landstar Ranger, Inc. v. Parth Enters., Inc.*, 725 F. Supp. 2d 916, 919 n.19 (C.D. Cal. 2010).

"The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). The Ninth Circuit directs a district court to consider the following factors: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

### III. Discussion

#### A. Plaintiff Has Satisfied Local Rule 55-1

Plaintiff's declaration satisfies Local Rule 55-1. (*See* Declaration of Cindy Chan ("Chan Decl."), Doc. 39-2.) On March 30, 2010, Plaintiff filed a Complaint against Defendants YNM and Yoo. (*Id.* ¶ 5; Compl.) On February 17, 2011, the Court ordered that default be entered against Defendant YNM, and on March 22, 2011, the Clerk of the Court entered default against Defendant Yoo. (Chan Decl. ¶¶ 9-10; *id.* Ex. 4.) Defendants are not infants or incompetent persons or in military service. (*Id.* ¶ 11.) And, notice was served on Defendants as required by Rule 55 of the Federal Rules of Civil Procedure. (*Id.* ¶ 12.) Accordingly, Plaintiff's declaration satisfies the requirements of Local Rule 55-1.

#### B. *Eitel* Factors Weigh in Favor of Entry of Default Judgment

Upon consideration of the *Eitel* factors, the Court concludes that the factors weigh in favor of default judgment.

### 1. Possibility of Prejudice to the Plaintiff

"The first *Eitel* factor considers whether a plaintiff will suffer prejudice if a default judgment is not entered." *Landstar Ranger*, 725 F. Supp. 2d at 920. A plaintiff suffers prejudice when denying default judgment would leave plaintiff without a remedy. *Id.* Defendants have infringed upon Plaintiff's trademarks resulting in damage to Plaintiff's business and reputation. (Compl. ¶¶ 30-35.) Without default judgment, Plaintiff will be left with no recourse to enforce its intellectual property rights. Therefore, as Plaintiff would suffer prejudice if default judgment were denied, the Court concludes that this factor favors default judgment.

### 2. & 3. Merits and Sufficiency of Plaintiff's Substantive Claims

"The second and third *Eitel* factors assess the substantive merit of plaintiff's claim and the sufficiency of its pleadings." *Landstar Ranger*, 725 F. Supp. 2d at 920. To warrant default judgment, the allegations in the Complaint must be sufficient to state a claim upon which Plaintiff can recover. *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978). Plaintiff asserts a claim for federal trademark infringement.[1] To state a trademark infringement claim, Plaintiffs must plead, "(1) that it has a protectible ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion, thereby infringing upon [plaintiff's] rights to the mark." *Dep't of Parks & Recreation v. Bazaar Del Mundo, Inc.*, 448 F.3d 1118, 1124 (9th Cir. 2006).

Plaintiff alleges that that it owns twenty registered trademarks related to its "Coach" label. (Compl. ¶ 11.) Plaintiff alleges that these marks are arbitrary and distinctive, have

---

[1] Plaintiff also asserted claims for trade dress infringement, false designation of origin, federal trademark dilution, trademark dilution under California law, copyright infringement, and common law unfair competition. (Compl.) However, as Plaintiff's Application for Default Judgment seeks damages only as to Plaintiff's trademark claim, the Court only considers the trademark infringement claim. (Appl. for Default J. at 5, 7.)

widespread acceptance and recognition among the consumer public, and identify Plaintiff as a source and origin of the goods on which they appear. (*Id.* ¶ 17.) Plaintiff has used the Coach label for over sixty years and invested millions of dollars in advertising, promoting, and marketing its products under the Coach label. (*Id.* ¶¶ 10, 16.) Defendants have infringed upon Plaintiff's marks by importing, advertising, distributing, and selling merchandise bearing Plaintiff's marks, or marks that are substantially indistinguishable from Plaintiff's marks. (*Id.* ¶ 23.) Defendants' actions are likely to cause consumer confusion and have caused damage to Plaintiff's business and reputation. (*Id.* ¶¶ 32, 35.) Accepting these factual allegations as true, as the court must in deciding an application for default judgment, Plaintiff has sufficiently pleaded a claim for trademark infringement, and the Court concludes that these factors favor default judgment.

### 4. Sum of Money at Stake in the Action

"The fourth *Eitel* factor examines the amount of money at stake in relation to the seriousness of a defendant's conduct." *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1060 (N.D. Cal. 2010). Plaintiff seeks injunctive relief against further infringement by Defendants and statutory damages of $1,000,000.00 pursuant to 15 U.S.C. § 1117(c)(2).[2] (Appl. for Default J. at 10.) The amount of money sought by Plaintiff is consistent with the allegations in the Complaint and the claim asserted. *See* 15 U.S.C. § 1117(c)(2) (providing statutory damages of "not more than $2,000,000 per counterfeit mark" if the court "finds that the use of the counterfeit mark was willful"); *Craigslist,* 694 F. Supp. 2d at 1060 (holding that this factor weighed in favor of default judgment where plaintiff asserted copyright, trademark, breach of contract, and fraud claims and sought

---

[2] Plaintiff, in the Complaint, also sought actual, compensatory, and punitive damages; accounting and disgorgement; and costs, interest, and attorney fees. (Compl. ¶¶ A-J.) In the Application for Default Judgment, Plaintiff is seeking only a permanent injunction, $1,000,000.00 in statutory damages, and costs. (Appl. for Default J. at 10.)

damages in the range of $1,177,827.07 to $4,900,327.07). Accordingly, this factor weighs in favor of default judgment.

### 5. Possibility of a Dispute Concerning Material Facts

"The fifth *Eitel* factor examines the likelihood of dispute between the parties regarding the material facts surrounding the case." *Craigslist,* 694 F. Supp. 2d at 1060. Where a plaintiff has filed a well-pleaded complaint, the possibility of dispute concerning material facts is remote. *See, e.g.*, *Landstar Ranger*, 725 F. Supp. 2d at 921-22 ("Since [plaintiff] has supported its claims with ample evidence, and defendant has made no attempt to challenge the accuracy of the allegations in the complaint, no factual disputes exist that preclude the entry of default judgment."). Moreover, the possibility of dispute concerning material facts is further diminished given Defendants' early participation in this matter and subsequent failure to contest Plaintiff's claims. As Plaintiff filed a well-pleaded Complaint and Defendants have abandoned their defense of this matter, this factor weighs in favor of default judgment.

### 6. Whether the Default was Due to Excusable Neglect

"The sixth *Eitel* factor considers whether defendant's default may have been the product of excusable neglect." *Landstar Ranger*, 725 F. Supp. 2d at 922. This factor favors default judgment when the defendant has been properly served or the plaintiff demonstrates that the defendant is aware of the lawsuit. *Id.* (concluding that this factor favored default judgment and "possibility of excusable neglect is remote" where defendant had been properly served); *Craigslist,* 694 F. Supp. 2d at 1061 ("Plaintiff has proffered evidence showing Defendants were clearly aware of the pending litigation."). Here, Defendants were properly served and initially participated in this litigation, and thus, default did not occur because of excusable neglect. (*See* Acknowledgement of Service, Doc. 5.)

#### 7. Strong Policy Favoring Decisions on the Merits

"The final *Eitel* factor examines whether the strong policy favoring deciding cases on the merits prevents a court from entering default judgment." *Craigslist,* 694 F. Supp. 2d at 1061. Although, "[c]ases should be decided upon their merits whenever reasonably possible," *Eitel*, 782 F.2d at 1472, "Rule 55(a) allows a court to decide a case before the merits are heard if defendant fails to appear and defend." *Landstar Ranger*, 725 F. Supp. 2d at 922. Notwithstanding the strong policy presumption in favor of a decision on the merits, where a defendant fails to appear and respond as occurred here, a decision on the merits is impossible and default judgment is appropriate. *See Craigslist,* 694 F. Supp. 2d at 1061. Thus, this factor weighs in favor of default judgment.

### C. Remedies

Plaintiff seeks injunctive relief against further infringement by Defendants, statutory damages of $1,000,000.00, and costs. The Court considers each in turn and holds that Plaintiff is entitled to injunctive relief, statutory damages, and costs.

#### 1. Injunctive Relief

Plaintiff seeks injunctive relief to permanently enjoin Defendants from using Plaintiff's marks in connection with the sale and offer for sale of infringing products. (Appl. for Default J. at 10.) Injunctions are authorized for trademark infringement pursuant to 15 U.S.C. § 1116(a). *See also Craigslist,* 694 F. Supp. 2d at 1061-62 (granting injunction based upon trademark infringement claims). A permanent injunction based upon a trademark infringement action is appropriate where it is not "absolutely clear" that a defendant's infringing activities have ceased and will not begin again. *PepsiCo*, 238 F. Supp. 2d at 1177-78 (granting permanent injunction despite limited evidence from plaintiff regarding the risk of future infringement by the defendant). As discussed above, Plaintiff

has established that it is entitled to judgment on its trademark infringement claim. Given Defendants' failure to defend against this lawsuit and Plaintiff's evidence that Defendants' infringement continued even after the filing of this lawsuit, (Chan Decl. ¶ 8,) there is no indication that Defendants have or will terminate their infringing activities. Accordingly, the Court permanently enjoins Defendants from using Plaintiff's marks in connection with the sale and offer for sale of infringing products.

### 2. Damages

Plaintiff seeks $1,000.000.00 in statutory damages. (Appl. for Default J. at 9.) Because Defendants have refused to participate in discovery, Plaintiff argues that ascertainment of Defendants' profits is impossible and asks the Court to impose statutory damages. Pursuant to 15 U.S.C. § 1117(c):

> [T]he plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits under subsection (a) of this section, an award of statutory damages for any such use in connection with the sale, offering for sale, or distribution of goods or services in the amount of--
> 
> (1) not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or
> 
> (2) if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just.

15 U.S.C. § 1117(c). Plaintiff argues that Defendants' action were willful and therefore subject to 15 U.S.C. § 1117(c)(2).

"Willfulness can be established by evidence of knowing conduct or by evidence that the defendant acted with an aura of indifference to plaintiff's rights – in other words, that

the defendant willfully blinded himself to facts that would put him on notice that he was infringing another's trademarks, having cause to suspect it." *Philip Morris USA Inc. v. Liu*, 489 F. Supp. 2d 1119, 1123 (C.D. Cal. 2007) (internal quotation marks and citation omitted). Here, Plaintiffs allege that "Defendants' acts [were] deliberate and intended to confuse the public as to the source of Defendants' goods or services and to injure Plaintiff and reap the benefit of Plaintiff's goodwill associated with Plaintiff's trademarks." (Compl. ¶ 33.) An allegation of willful trademark infringement is deemed true on default. *Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 698 (9th Cir. 2008). Furthermore, eight months after Plaintiff filed this lawsuit, Defendants continued to infringe upon Plaintiff's marks. (Chan Decl. ¶ 8.) Accordingly, the Court holds that Defendants infringement upon Plaintiff's marks was willful.

District courts have discretion in determining the amount of statutory damages, subject only to the statutory minimum and maximum. 15 U.S.C. § 1117(c)(1) (providing for a minimum of $1,000 and a maximum of $200,000 "as the court considers just"); *see also Harris v. Emus Records Corp.*, 734 F.2d 1329, 1335 (9th Cir. 1984) (interpreting 17 U.S.C. § 504(c)), a similarly-worded copyright infringement provision, and concluding that district courts have "wide discretion in determining the amount of statutory damages to be awarded, constrained only by the specified maxima and minima."). A finding of willfulness subjects a defendant to an enhanced statutory maximum of $2,000,000.00. 15 U.S.C. § 1117(c)(2). In *Philip Morris*, a district court awarded the statutory maximum of $1,000,000 for each of two separate trademark infringements by the defendant, for a total award of $2,000,000.00 where the defendant transported and unloaded counterfeit cigarettes and was willfully ignorant that the cigarettes infringed upon plaintiff's trademark.[3] *Philip Morris*, 489 F. Supp. 2d at 1122-24. The court awarded the statutory

---

[3] The statutory maximum provided for in 15 U.S.C. § 1117(c)(2) was doubled in 2008 from $1,000,000.00 to $2,000,000.00. Prioritizing Resources and Organization for Intellectual Property Act of 2008, PL 110–403 (Oct. 13, 2008).

10

1  maximum "based on the need (1) to deter Defendant, and other counterfeiters, from
2  violating Plaintiff's valid trademarks, (2) to compensate Plaintiff for the damage caused by
3  Defendant's actions, and (3) to punish Defendant for his willful violation of Plaintiff's
4  trademark." *Id.*; *see also Sara Lee Corp. v. Bags of N.Y., Inc.*, 36 F. Supp. 2d 161, 168
5  (S.D.N.Y. 1999) (awarding $750,000.00 in statutory damages under 15 U.S.C. § 1117(c)
6  where defendant willfully infringed plaintiff's trademark, misled the court, "failed to
7  provide evidence that would allow a more informed damages determination," continued
8  infringing activities after the lawsuit had commenced, and maintained a large inventory of
9  counterfeit goods). Indeed, the Ninth Circuit has articulated a deterrence policy to
10 discourage trademark infringement. *See Playboy Enters., Inc. v. Baccarat Clothing Co.*,
11 692 F.2d 1272 (9th Cir. 1982); *Lindy Pen Co., Inc. v. Bic Pen Corp.*, 982 F.2d 1400, 1406
12 (9th Cir. 1993) (citing *Playboy Enterprises* for the proposition that "this circuit has
13 announced a deterrence policy in response to trademark infringement."). In *Playboy*
14 *Enterprises*, the Ninth Circuit noted:

> In addition to the harm caused the trademark owner, the consuming public is equally injured by an inadequate judicial response to trademark infringement. Many consumers are willing to pay substantial premiums for particular items which bear famous trademarks based on their belief that such items are of the same high quality as is traditionally associated with the trademark owner. As a result of this trademark infringement the consuming public is denied the benefit of their bargains and the reputation and goodwill of the trademark owner is accordingly harmed. For these reasons, it is essential that the trial courts carefully fashion remedies which will take all the economic incentive out of trademark infringement.

*Id.* Therefore, pursuant to 15 U.S.C. § 1117(c)(2), in accord with the rationale of *Philip Morris* and *Playboy Enterprises*, and in light of Defendants willful infringement of Plaintiff's trademark, the Court awards Plaintiffs $1,000,000.00 in statutory damages.

**3. Costs**

A plaintiff is entitled to recover "costs of the action" in trademark infringement actions. 15 U.S.C. § 1117(a)(3). Based upon Defendants' conduct in this case and the Court's conclusion that Defendants' actions were willful, the Court holds that Plaintiff is entitled to recover its costs incurred in bringing this action. *See* 15 U.S.C. § 1117(a). Plaintiff is to file a bill of costs following entry of default judgment. *See* C.D. Cal. L.R. 54-3.

**IV. Conclusion**

For the reasons set forth, the Court GRANTS Plaintiff's Application for Default Judgment against Defendants YNM, Inc. and Young Goon Yoo. Plaintiff shall submit its bill of costs within fifteen days of entry of this order.

DATED: May 6, 2011

**JOSEPHINE STATON TUCKER**
JOSEPHINE STATON TUCKER
UNITED STATES DISTRICT JUDGE